**PHARMACIA LABORATORIES INC.**

v.

**UNITED STATES.**

**C.D. 4798.**

United States Customs Court.

April 18, 1979.

WATSON, Judge:

This action was commenced to contest the denial of plaintiff's protest against the tariff classification of four types of radioimmunoassay diagnostic testing kits. The kits are used to detect the presence of certain chemicals in blood serum in a manner detailed, *infra.* Most of the kits were classified under item 799.00 of the Tariff Schedules of the United States (TSUS) [1] as other articles not provided for elsewhere in the tariff schedules. They were assessed with

1. Some entries were classified under item 429.-95, 432.00 or 439.50. Defendant concedes the error of those classifications and, as to them, requests judgment without the affirmance of the classifications.

duty at the rate of 6 or 5 percent ad valorem depending on the year of entry, pursuant to T.D. 68–9.

Plaintiff claims that the kits are properly classifiable under item 494.50 of the TSUS as a usefully radioactive chemical compound and should therefore be free of duty.

The parties are in agreement that these kits are entireties for the purpose of classification, and plaintiff further agrees that if the articles are not classifiable as it claims, the classification under item 799.00 is correct.

The short answer to plaintiff's claim is that the individual kit is not a chemical compound in its physical form. It is not a compound within the meaning of headnote 2 of schedule 4[2] and does not come within the plain meaning of the claimed item.

Each imported article is a kit containing four or five separate vials, only one of which contains a radioactive substance. Thus, each kit is a collection of four or five distinct and separate compounds. In its imported form the kit is therefore not adequately or specifically described, in its entirety, as a usefully radioactive compound. The kits are simply too diverse in their contents to be properly described by the claimed provision. In short, the claimed provision cannot be interpreted to cover the importations. *The Englishtown Corporation v. United States,* 64 CCPA 84, 87, C.A.D. 1187, 553 F.2d 1258 (1977).

Plaintiff has stressed the function of the radioactive material, but even this line of argument could not obviate the separate existence of the other substances. Assuming, however, that the court was to enter into a functional analysis of the importations, the result would not be different.

The kits contain specific antibodies for the chemical sought to be measured. In essence, the antibody component is mixed with the radioactive component and with the blood serum under scrutiny. The chemical being measured competes with the radioactive material for attachment to the antibody.

Following the separation of the resulting mass of antibody (bound with the chemical sought to be measured and with radioactive material) the radioactivity is measured. The reading of radioactivity is inversely proportional to the amount of the chemical sought to be measured. In other words, if the radioactivity reading is low this indicates a relatively greater presence on the antibody of the chemical sought to be measured and hence its greater presence in the blood serum being tested. If the radioactivity reading is high a lesser presence of the chemical being measured is indicated.

A determination of the quantity of the chemical is then made by comparing the radioactivity readings obtained from the unknown quantity with the readings obtained as a result of the same procedure done on a known quantity of the chemical sought to be measured. The known quantity is contained in the "standard" component of the kit.

This description reveals that there are at least two other components of these kits which are as important as the radioactive material; i. e., the antibody, without which the test would have no specificity, and the standard, without which the test result would be a meaningless reading of radioactivity. It would be impossible to ignore the

2.  2. (a) The term *"compounds"*, as used in this schedule, means substances occurring naturally or produced artificially by the reaction of two or more ingredients, each compound—

> (i) consisting of two or more elements,
> (ii) having its own characteristic properties different from those of its elements and from those of other compounds, and
> (iii) always consisting of the same elements united in the same proportions by weight with the same internal arrangement.

The presence of impurities which occur naturally or as an incident to production does not in itself affect the classification of a product as a compound.

(b) The term *"compounds"*, as used in this schedule, includes a solution of a single compound in water, and, in determining the amount of duty on any such compound subject to duty in this schedule at a specific rate, an allowance in weight or volume, as the case may be, shall be made for the water in excess of any water of crystallization which may have been in the compound.

essential contribution of these other components to the function of the kit by allowing the radioactive material alone to control the classification.

The cases cited by plaintiff are all distinguishable. In *Donalds Ltd., Inc. v. United States,* 32 Cust.Ct. 310, C.D. 1619 (1954), an inhaler, consisting of three parts, a holder, a cotton core and a volatile liquid inhalant, was found to be an entirety, classifiable as a medicinal preparation, as against the government's separate tariff treatment of the holder and its contents. The distinguishing feature of that case was the finding that the term "medicinal preparation" described the entire importation as a description of the use of the entirety. The tariff description claimed here is a description by physical form and characteristics which are not displayed by the entirety and therefore do not describe the entirety. The same distinction holds true for the classification of a fishing reel with two interchangeable spools as a fishing reel in *United States v. Charles Garcia & Co., Inc.,* 48 CCPA 140, C.A.D. 780 (1961).

Those cases [3] which deal with the question of whether minute ingredients should play a role in the classification of mixtures do not support plaintiff's position. In certain circumstances the quantity and function of minute ingredients may justify excluding them from consideration. Here, however, those components which plaintiff would exclude from consideration are in no sense minute. In fact, in their cumulative importance, in terms of function and quantity, the equal if not exceed the radioactive material emphasized by plaintiff.

In light of the above, judgment shall be entered for the defendant. In those instances in which the entries were classified under a provision other than item 799.00 the judgment is entered without affirmance of the classifications.

---

**3.** *United States v. Aceto Chemical Co., Inc.,* 64 CCPA 78, C.A.D. 1186, 553 F.2d 685 (1977);

*United States v. Cavalier Shipping Co., Inc.,* 60 CCPA 152, C.A.D. 1103, 478 F.2d 1256 (1973).